**COMPLETE AUTO TRANSIT, Inc., Appellant,**

v.

**Deroy FLOYD et al., Appellees.**

**No. 16424.**

United States Court of Appeals
Fifth Circuit.

Nov. 13, 1957.

As Modified on Denial of Rehearing
Jan. 14, 1958.

Cubbedge Snow, Macon, Ga., T. Ross Sharpe, Lyons, Ga., Philip S. Ringel, Brunswick, Ga., Martin, Snow & Grant, Macon, Ga., Ringel & Ringer, Brunswick, Ga., Alvin L. Layne, Lyons, Ga., of counsel, for appellant.

J. H. Highsmith, Baxley, Ga., E. Way Highsmith, Brunswick, Ga., Gordon Knox, Jr., Hazlehurst, Ga., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

Mrs. Deroy Floyd was fatally injured when the Farmall Tractor, on whose drawbar she was riding, was overtaken and struck by an empty motor vehicle carrier owned and operated by appellant, Complete Auto Transit, Inc. The accident happened on a public highway near Hazlehurst, Georgia, in the nighttime on a three percent curve. This action was brought by the husband and ten children (ranging from 4 to 25 years in age) of the decedent under the Georgia Code, § 105–1306 and § 105–1308. The object of the trip was to enable the decedent to reach a telephone to call a hospital and ascertain the condition of her brother who was ill.

The evidence showed that the deceased was 39 years of age, with an expectancy of 28.87 years, and was working in a garment factory earning as much as $1,500 per year. In addition, she performed the duties of wife and mother and assisted her husband in many of his farming activities.

Appellees contended that appellant was operating this motor vehicle at an ex-

cessive rate of speed, that its driver was not keeping a proper lookout ahead and that he negligently failed to see the Farmall Tractor being operated by the husband of the decedent in time to avoid running into it. Appellant denied that the driver of its motor vehicle was negligent as charged by appellees, and alleged affirmatively that the collision was caused by failure of the tractor to be equipped with a red tail light as required under Georgia law, and by the fact that the decedent was standing on the drawbar of the tractor in such position as to obscure whatever light there was on its rear.

The jury returned a verdict against appellant in the total sum of $107,500, $7,500 in favor of the husband and $10,000 in favor of each child, and judgment was duly entered for that amount. Appellant moved for a new trial, contending that appellees' counsel made improper and inflammatory argument to the jury, that evidence of an experiment conducted by the sheriff of Jeff Davis County was wrongfully admitted, and that the verdict was excessive as a matter of law. The appeal from the order denying this motion is based upon the same grounds. Our decision will be based upon the ground that the court below abused its discretion in refusing to set the verdict aside as excessive, but the other two assigned errors will be discussed briefly.

During the concluding summation before the jury, Attorney J. H. Highsmith, for appellees, was making an argument which appellant's counsel thought would be proper only if punitive damages were sought.[1] The attorneys disagree as to just what appellees' attorney did say to the jury, and the record does not present the matter with such clarity as to justify reversal because of the argument, which, if made, would come within the condemnation of the decisions of the Courts of Georgia, e. g. Southern Stages, Inc., v. Brown, 1948, 76 Ga.App. 694, 46 S.E.2d 765, and of this Court, e. g. Atlantic Coast Line Railroad Co. v. Kammerer, 1953, 205 F.2d 525, and same case, 1955, 218 F.2d 149.

The record before us, insofar as it goes, tends to sustain the position of appellant inasmuch as its attorney quoted the argument of appellee as he understood it, the attorney to whom the argument was attributed responded immediately and did not deny the statement as set forth by his adversary, and the court in its ruling seemed to accept appellant's version of what had been said. But, as stated, the question is not sufficiently presented by the record to justify our reversing the judgment on that ground.

Nor do we base our decision on the alleged error that the court below erred in admitting the testimony of the sheriff concerning the experiment made by him long after the accident and a few days before the trial. A tractor had been placed in the position occupied by the one which had been struck by appellant's motor vehicle, and the sheriff

---

1. During Mr. Highsmith's argument the following took place according to the record:

"Mr. Ringel:

"Now, if Your Honor please, we move for a mistrial because he is arguing punitive damages.

"The Court:

"What is that?

"Mr. Ringel:

"He is asking the jury to return a verdict for the full amount of $165,000.00 because of these large trucks running people off the highway. He stated in substance 'We want you to stop these trucks from running the farmers off the highway, and that a verdict for the full amount of $165,000.00 we will think will do it.'

"Mr. Highsmith:

"No, sir. We are not asking for any punitive damages. We are not entitled to any punitive damages. I haven't said a word about punitive damages.

"The Court:

"Well, let's stick to the facts in the case. We are not trying trucks for running people off highways. Gentlemen of the jury, just disabuse your mind of that.

"Mr. Ringel:

"We move again for a mistrial on that ground.

"The Court:

"Well, I overrule you on that ground. Just argue the evidence, Mr. Highsmith."

approached from the direction followed by it, making observation as to when the tractor would be visible; and he testified as to the distance between him and the tractor when it became visible to him. The situation existing on the night of the accident was not reproduced in all of its details, in that the tractor was standing still at the time of the experiment, the light on it was indisputably a red light, and no person wearing a dress was on the drawbar. It is manifest, moreover, that, in such an experiment, the one conducting it would be focusing his attention primarily on the tractor he knew to be at the particular point and probably to the exclusion of all other objects which normally a motorist would be called upon to include in his attention. The objection to the testimony was probably addressed more to its weight than to its admissibility, but such evidence should be received with caution and proper explanation of its weight and worth should be given to the jury.

■ Our reversal of the judgment of the court below is based upon the error committed by the court below in denying appellant's motion for new trial based upon the legal excessiveness of the verdict of the jury. Recent decisions of this Court have defined in clear terms the rule applying to such a situation.[2] The rule embraces these ingredients: the granting or refusing of a new trial is a matter resting within the sound discretion of the trial court exercised with regard to what is right and in the interest of justice; but that discretion is subject to review by the appellate court when it feels that injustice has resulted from

the action of the lower court because of its conviction that the verdict was excessive as a matter of law and not merely as a matter of fact. In other words, the appellate court will declare that the trial court has abused its discretion if the verdict is so gross or inordinate in amount as to be contrary to right reason; and if the evidence furnishes no sound basis for the verdict, it is the inescapable duty of the appellate court to hold that the verdict was excessive as a matter of law.

We hold that such is the case here. And such a holding is in line with the Georgia statute, which forbids a court to interfere with the jury's action in fixing the damage "unless the damages are * * * so excessive as to justify the inference of gross mistake or undue bias."[3]

■ The privilege of having the wife and mother with them in the home was one which was incalculably precious to the husband and children and was an element the jury was justified in considering. But such relationships are not readily evaluated by dollar standards, and the Courts of Georgia have not emphasized them in defining what is included in the terms of the Georgia statute[4] granting the right to recover "the full value of the life of the decedent * * *." In an old case,[5] the court said that the place of a wife cannot be filled and that the actual facts of each case should guide the jury in estimating for themselves, in the light of their own observation and experience and to the satisfaction of their own consciences, the amount which would fairly and justly compensate for such a loss.

2. See, e. g., Commercial Credit Corp. v. Pepper, 1951, 187 F.2d 71, 75–76; Sunray Oil Corp. v. Allbritton, 1951, 188 F. 2d 751; and Whiteman v. Pitrie, 1955, 220 F.2d 914, 920–921.

3. Georgia Code, § 105–2015.

4. The Georgia Statutes, Code §§ 105–1306 and 105–1308, permit "the right to recover the full value of the life of the decedent" "without deduction for necessary or other personal expenses of the decedent had [s]he lived," but the Georgia decisions brought before us do not point definitively to the meaning of these words.

5. Metropolitan Street Railway Co. v. Johnson, 1893, 91 Ga. 466, 18 S.E. 816. The court was not dealing with the statutes here involved, but with damages recoverable by a husband for disabling personal injuries received by his wife.

A later case [6] stressed the earning capacity and loss of services as the important items in a suit for the death of a wife and mother. But, subsequently,[7] the court recognized that the value of domestic services rendered by a wife could include "the value of many services incapable of exact proof."

The "full financial value of the life of the deceased" was stressed in another case [8] in an opinion discussing damages arising from loss of services as the chief element of recovery for the death of a wife and mother. But a broad base of recovery for the intangibles of the wife-mother relationship according to "all the facts and circumstances of the family and the living conditions", was recognized in the decisions of Blue's v. Harwell, supra. In that case the jury had awarded damages for the death of a wife in the sum of $35,000.00 and the Court of Appeals refused to set it aside as being the product of gross mistake or undue prejudice or bias on the part of the jury.[9]

The last word from a Georgia appellate court was spoken by the Court of Appeals in Swift & Co. v. Lawson, 1957, 95 Ga.App. 35, 97 S.E.2d 168, 183, where the Court set aside, as excessive as a matter of law, a verdict for $80,000.00 rendered to a wife for the wrongful death of her husband. At the time of his death he was thirty-eight years old and his expectancy was practically identical with that of the decedent here, and his earnings were shown to be more than double those claimed in the case before us. The Court discussed a number of Georgia cases and concluded that the jury had a wide latitude in the fixing of damages so long as the result they reached was "fair and reasonable and as authorized by the evidence."

Appellees have not cited us to any case justifying the award of any such amount as that here, but they content themselves with repeating in many different ways the rule we here recognize, that the value of the life of a mother is not determinable solely from the evidence of the amount of money she may have earned or the actual domestic service performed, and that the case is definitely an exception where an appellate court will reverse the action of a trial court in passing on a motion for a new trial challenging the size of the verdict.

Appellants have listed eight Georgia cases, which they assert to be all they have been able to find where verdicts have been permitted to stand in cases involving death of a wife and mother. These amounts run from $5,000 to $15,000, and appellants take the position that the sole question involved is the value of the decedent's life, the number of children surviving, the character of support to which they have been accustomed and like considerations being of no moment. Cf. Central Railroad Co. v. Rouse, 77 Ga. 393, 3 S.E. 307; Macon Consolidated Street Railway Co. v. Barnes, 113 Ga. 212, 38 S.E. 756; Engle v. Finch, 165 Ga. 131, 139 S.E. 868; and Central Truckaway System, Inc. v. Harrigan, Ga.App., 53 S.E.2d 186.

It is not necessary for us, however, to assess or evaluate the various

6. Standard Oil Co. v. Reagan, 1915, 15 Ga.App. 571, 84 S.E. 69.

7. Central of Georgia Railway Co. v. Keating, 1932, 45 Ga.App. 811, 165 S.E. 873, 878.

8. Shermer v. Crowe, 53 Ga.App. 418, 186 S.E. 224, 228.

9. Blue's Truck Line, Inc., v. Harwell, 1938, 59 Ga.App. 305, 200 S.E. 500, 502.

ingredients which the Georgia Courts recognize as entering into the concept of the value of decedent's life. Taking all of these ingredients into consideration, we hold that there is no justification for a judgment based upon a verdict in the amount fixed by the jury in this case, and that the verdict is excessive as a matter of law and is not sustained by any evidence or authority.

The judgment of the court below is reversed and the case remanded for a new trial.

Reversed and remanded.