**Erma P. BERDEAUX, Plaintiff-Appellee,**

v.

**GAMBLE ALDEN LIFE INSURANCE COMPANY, Defendant-Appellant.**

**No. 74–2196.**

United States Court of Appeals, Fifth Circuit.

March 19, 1976.

Champ Lyons, Jr., Montgomery, Ala., for defendant-appellant.

James W. Cameron, Montgomery, Ala., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and ROSENN,* Circuit Judges.

THORNBERRY, Circuit Judge:

This Alabama diversity case calls into question the proper interpretation to be given terms contained in a policy of life insurance. The insured, Eddie L. Berdeaux, was killed as a result of an accident while operating his 1970 Ford "one-half ton pickup" truck in Crenshaw County, Alabama. Following an unsuccessful demand for payment, the insured's beneficiary, his wife, commenced this action against the Gamble Alden

* Of the Third Circuit, sitting by designation.

Life Insurance Company for the face amount of the policy. The contested portion of the policy provided coverage for

[a]ny accident occurring while the Insured is actually riding in or driving any private passenger automobile. As used in this policy, automobile means a land vehicle of the type commonly and ordinarily referred to as "automobile," and a private passenger automobile means a private automobile of the private passenger design *designed primarily for transporting persons.*

Appendix at 4 (Emphasis supplied).

Over appellant's objection, the case was submitted to the jury, which returned a verdict in favor of Mrs. Berdeaux.[1] Judgment was rendered on April 2, 1974, and the Company appealed. Oral argument was had before this Court, and on June 16, 1975, we certified the following question to the Alabama Supreme Court: Does the accident policy referred to above unambiguously exclude the 1970 Ford one-half ton pickup from the scope of coverage? On December 4, 1975, the Alabama Supreme Court responded in the negative. The pivotal issue remaining for our consideration, as drawn by the parties and given the response of the highest state court, is the extent to which the evidence presented in the district court raised an issue for the jury on the primary design purpose of the fatal vehicle. Appellant insurance company contends that plaintiff failed to introduce any competent or relevant evidence of primary design purpose, that its own evidence on this issue stands uncontested, and that the district court, therefore, should not have submitted the case to the jury. For the reasons that follow, we are constrained to disagree.

■ As a preliminary matter, the parties agree that evidence of the actual use to which the insured put the vehicle was not relevant on the issue of primary design purpose. *See* Supplemental Brief for Appellee at 1; *Tuttle v. Gamble Alden Life Insurance Company*, 385 F.Supp. 1352, 1356 (N.D.Tex.1974). Appellant argues, however, that the introduction of this evidence in the district court irreparably prejudiced its case before the jury. Assuming for the purposes of argument that evidence of actual use is not admissible, we reject appellant's argument of irreparable prejudice. The district court instructed the jury in clear and precise language not to consider evidence of actual use,[2] and we consider the instruction adequate to cure any prejudice that may have resulted to appellant. *See Gardner v. Joyce*, 482 F.2d 283, 285 (5 Cir.), *cert. denied*, 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973); *Fidelity & Casualty Company of New York v. Talbot*, 234 F.2d 425, 428 (5 Cir. 1956); *cf. Pope v. Travelers Insurance Company*, 477 F.2d 557, 558 (5 Cir. 1973); *Conner v. United States*, 322 F.2d 647 (5 Cir. 1963), *cert. denied*, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964).

The evidence challenged by appellant insurance company came from plaintiff's witness, L. R. Perry, a "truck specialist" with twenty-four years experience in the merchandising of Ford trucks. *See* Appendix at 44. Testifying that the vehicle in question could be characterized as "dual purpose," *see* Appendix at 53, 58, Mr. Perry also stated at four points in his testimony that the *primary* design

---

1. In response to a special interrogatory, the jury found that the pickup truck was a "private automobile of the private passenger design designed primarily for transporting persons." *See* Appendix at 35.

2. The district court gave the jury the following instruction:

 I charge you that in your consideration of whether or not a pickup truck is a private automobile of the private passenger design designed primarily for transporting persons, you must not give any consideration as to the actual use of the pickup truck by the insured Eddie Lee Berdeaux. Your consideration should be limited entirely to the manufacturer's purpose of the design and to the general use to which pickup trucks are and were used. Such general use of pickup trucks has been and, I charge you, is appropriately considered as a part of the terms['] construction; by "terms," I am talking about "design."

Appendix at 126.

purpose of the 1970 Ford one-half ton pickup truck was the transportation of persons. *See* Appendix at 54, 58, 61, 67. The basis for Mr. Perry's conclusion, as he testified, was the manufacturer's emphasis on passenger comfort in the design of the vehicle. *See* Appendix at 54–56. Moreover, when questioned on the assumption that the operator of the vehicle is not to be regarded as a passenger, Mr. Perry remained steadfast in his appraisal of primary design purpose. *See* Appendix at 61–62; *Strickland v. Davis*, 221 Ala. 247, 128 So. 233, 237 (1930).

To rebut the Perry testimony, appellant introduced the deposition of Robert Beauvais, a design engineer with eleven years experience in the Light Truck Division of the Ford Motor Company. In his deposition, Mr. Beauvais stated that the primary design purpose of Ford trucks, including the 1970 one-half ton pickup truck, is the transportation of property, and the same witness rejected the suggestion that the primary design purpose is the transportation of persons. *See* Appendix at 87, 88–89. Responding to the conflict between the testimony of Mr. Perry and the deposition of Mr. Beauvais, appellant argues that in the absence of a qualified witness with a contrary opinion, the view of the manufacturer or its representative is controlling on the question of primary design purpose. We view appellant's argument as a challenge to the district court's qualification of Mr. Perry as an expert witness on the question of primary design purpose, *see* Appendix at 52, and we will analyze the argument accordingly.

 The competency of an expert witness is a matter addressed largely to the discretion of the trial judge, *e. g.*, *Dyas v. Kansas City Southern Ry. Co.*, 425 F.2d 1073, 1074 (5 Cir. 1970); *Reuter v. Eastern Airlines, Inc.*, 226 F.2d 443, 445 (5 Cir. 1955), and the district court's qualification of an expert will be sustained unless clearly and manifestly erroneous. *E. g.*, *Scott v. Fancher*, 369 F.2d 842, 844 (5 Cir. 1966). From our examination of Mr. Perry's credentials, and being mindful of the limited scope of our review, we conclude that the district court did not abuse its discretion in qualifying Mr. Perry as an expert witness on the primary design purpose of the 1970 Ford one-half ton pickup truck. As indicated above, Mr. Perry possessed at the time of trial twenty-four years experience in the marketing of Ford trucks. Mr. Perry had attended numerous workshops and training institutes devoted to the study of Ford trucks, including their design, *see* Appendix at 45, and he was, in his lengthy career, a recipient of many sales awards. *See* Appendix at 46. We recognize, and Mr. Perry testified, that one must know the product to be an effective salesman. *See* Appendix at 47–48.

 The process by which industrial design decisions are made is usually complex, sometimes involves thousands of technical and management personnel, and can be measured most conveniently in years. This observation is particularly appropriate when one speaks of an automotive product. Admittedly, the manufacturer or its representative may be the best witness to the primary design purpose of a particular vehicle; we reject, however, the notion that the manufacturer or its representative is the only source of expert opinion on the issue of primary design purpose. The Beauvais deposition, introduced by appellant, must be recognized for what it was: one man's attempt, albeit expert, to trace the path taken in a complicated decision-making process. Likewise, the Perry testimony, relied on by plaintiff, was one expert's opinion on a disputed issue of fact. The useful distinction in this area is that drawn between the admissibility of expert opinion and the weight to be afforded that opinion. *See Eastern Airlines, Inc. v. American Cyanamid*, 321 F.2d 683 (5 Cir. 1963). The admissibility of the Perry testimony—or more accurately, Mr. Perry's qualification as an expert—was properly a matter for the

district court, and we sustain the district court's exercise of discretion. The weight to be given the Perry testimony, in light of the contrary opinion of Mr. Beauvais, was a matter for the jury.[3]

As a final matter, appellant challenges that portion of the jury charge permitting consideration of the general use given pickup trucks by members of the public in deciding the question of primary design purpose.[4] We reject appellant's argument. The deposition of appellant's own expert witness, Mr. Beauvais, disclosed, as one would expect, that general use is a key factor in the making of design decisions. *See* Appendix at 86. Indeed, Mr. Beauvais discussed several uses to which one-half ton pickup trucks are put—for example, the carrying of building materials. *See* Appendix at 87. Mr. Perry, on the other hand, was not permitted by the district court to testify on the general use of pickup trucks. *See* Appendix at 53. In view of the disclosures in the Beauvais deposition, we conclude that the district court correctly charged the jury on the issue of primary design purpose.

Accordingly, the judgment of the district court is in all respects affirmed.

---

**3.** The response of the Alabama Supreme Court to our certified question supports the position we take. In addition to holding that the policy language did not unambiguously exclude the pickup truck from coverage, the state court quoted approvingly from the decision in *Tuttle v. Gamble Alden Life Insurance Co.*, 385 F.Supp. 1352, 1356 (N.D.Tex.1974) (identical policy language to that in the instant case), for the proposition that the scope of policy coverage is a question for the trier of fact.

**4.** *See* note 2 *supra*.